IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BRYAN R. KATZ and KRISTINE J. CONCEPCION, *Plaintiffs*, <br><br> v. <br><br> GREAT AMERICAN ABSTRACT, LLC, et. al., *Defendants*. | CIVIL ACTION <br> NO. 23-1188 |

**Pappert, J.**                                                                                           August 18, 2025

## MEMORANDUM

Bryan Katz and Kristine Concepcion bought title insurance from Great American Abstract before buying a home in New Jersey. After closing, they were surprised to discover that $2,067.47 was still due on a local property tax. When Great American refused to cover the payment, they retained Daniel Berger to file a lawsuit. Berger claims his "initial impression of the case was [that it was] a straightforward and common brand of insurance bad faith" or breach of contract. (Resp. to Mot. for Sanctions at 3, ECF No. 92.) After filing an initial complaint reflecting as much, he nonetheless later attempted to turn this case into something far more than that. In his first and second amended complaints and the countless filings in between, he advanced increasingly outlandish and fantastical legal claims and theories. Great American—and Judge Pratter—expended significant resources addressing each one until, finally, the Court dismissed his case and the Third Circuit Court of Appeals dismissed the appeal.

1

Great American moves for attorneys' fees against Berger under 28 U.S.C. § 1927 for "multiplying the proceedings . . . unreasonably and vexatiously." Vexatious is a generous word for Berger's conduct. Aside from his numerous motions, briefs, notices and letters, Berger has been disrespectful, argumentative and difficult with defense counsel and two federal judges. Because Berger's conduct was in bad faith, the Court grants the Motion.

I

Judge Pratter explained this case's protracted factual and procedural history in her May 2024 opinion dismissing it. *See generally* (Mem. Dismissing Sec. Am. Compl., ECF No. 77). Everything stems from a 2020 real-estate transaction in which Plaintiffs bought a New Jersey property from former Defendant Timothy DeLuca. (*Id.* at 2.) The Plaintiffs hired Defendant KW Philly as their broker, who subsequently referred them to Great American Abstract for title insurance and escrow services. (*Id.*) Based on improvements DeLuca made to the property, New Jersey assessed an Affordable Housing Development Fee ("the Development Fee") on the property, most of which DeLuca paid prior to closing on December 7, 2020. (*Id.*) Two days after closing, a township tax collector found that $2,067.47 was still due under the Development Fee and attempted to collect. (*Id.* at 3.)

Plaintiffs filed a claim with Great American for indemnification for this fee but Great American never covered it or retained an attorney to bring an action against DeLuca. (*Id.* at 4.) So Plaintiffs filed this lawsuit in March of 2023 alleging, *inter alia*, breach of insurance contract and bad faith against Great American. (Compl. ¶¶ 153–66, ECF No. 1.) Great American moved to dismiss both claims, (ECF No. 5), prompting Berger to file his 81-page First Amended Complaint, (First Am. Compl., ECF No. 9),

which dramatically expanded the scope of the claims against Great American, including breach of insurance contract, insurance bad faith, violations of the Pennsylvania Unfair Trade Practices and Consumer Protection Law, the Racketeer Influenced and Corrupt Organizations Act, the Real Estate Settlement Procedures Act, and breach of fiduciary duty.  (First Am. Compl. ¶¶ 245–354.)

On June 22, 2023, Great American moved to dismiss the First Amended Complaint for failure to state a claim under Rule 12(b)(6).  (Mot. to Dismiss First Am. Compl., ECF No. 24.)  Rather than responding to that motion, Berger filed a "motion to strike" the motion to dismiss, (Mot. to Strike, ECF No. 26), requiring Great American to respond, (ECF No. 32), and resulting in a flurry of letters filed on the docket—mostly from Berger, (ECF Nos. 27, 30, 33, 35, 36).  On July 21, 2023, Judge Pratter held a status conference with counsel for the parties, (ECF No. 37), instructed Berger to refile the Complaint so it was clearer who he was suing and for what, and denied the motions to dismiss and to strike as moot, (ECF No. 38).

On August 25, 2023, instead of streamlining the pleading, Berger filed a gargantuan, 105-page Second Amended Complaint alleging the same claims against Great American but with more counts.  (Sec. Am. Compl., ECF No. 39.)  Great American filed its third motion to dismiss, (ECF No. 40), leading Berger to file a notice "renewing [his] objections contained in [his] prior motion to strike," (ECF No. 42).  This time, Berger also filed a response to the motion, (ECF No. 50), to which Great American replied, (ECF No. 53).  The Court held oral argument on November 28, 2023, (ECF No. 54), but just days after that proceeding, Berger filed a "notice of voluntary dismissal of state law counts per Rule 41," (Not. of Voluntary Dismissal, ECF No. 58), and a motion

3

for leave to file a surreply, (ECF No. 59).  Another filing frenzy ensued.  (ECF Nos. 60, 61, 62, 66, 67, 69, 72, 74, 75.)  Finally, on May 15, 2024, Judge Pratter, just two days before her death, dismissed Plaintiffs' Second Amended Complaint without leave to amend for failure to state a claim and lack of subject matter jurisdiction.  (Mem. Dismissing Sec. Am. Compl., ECF No. 76.)

On May 28, 2024, Great American moved for sanctions under Federal Rule of Civil Procedure 11 and 28 U.S.C. § 1927.[1]  Berger appealed the Court's Order dismissing his Second Amended Complaint on June 3, 2024, (ECF No. 80), and the Court waited until the Third Circuit Court of Appeals dismissed his appeal, (ECF No. 88), before taking up Great American's motion.  By that time, Berger still had not responded to the motion, but the Court gave him another chance to do so, (ECF No. 89), and he did on May 5, 2025, (ECF No. 92).  Great American filed a reply on May 12, (ECF No. 95), and the Court heard oral argument on August 4, 2025, (ECF No. 109).  To put it mildly, that proceeding did not go well for Berger.  On August 14, he filed a "motion to take deposition from Glen D. Kimball," one of the defense attorneys.  (ECF No. 113.)

II

Before turning to Berger's vexatious and unreasonable conduct throughout the course of this litigation, the Court will address his equally vexatious and unreasonable

---

[1] Great American concedes that its Motion for Rule 11 Sanctions is untimely under the so-called supervisory rule, *see Mary Ann Pensiero, Inc. v. Lingle*, 847 F.2d 90, 92 (3d Cir. 1988), and because it failed to comply with Rule 11's safe-harbor provision, Fed. R. Civ. P. 11(c)(2); *In re Schaefer Salt Recovery, Inc.*, 542 F.3d 90, 99 (3d Cir. 2008); (ECF No. 107) (Sanctions Oral Arg. Tr. at 4:4–10, ECF No. 109.)  The Court thus considers only the Motion for Sanctions under Section 1927, which contains no safe-harbor provision and is not subject to the supervisory rule.  *See Shaefer*, 542 F.3d at 102.

4

threshold argument that these sanctions proceedings somehow violate his due process rights. The Fifth Amendment Due Process Clause entitles Berger to the "'opportunity to present legal arguments either orally, in writing, or both at the District Court's discretion.'" *Berger v. Hahnemann Univ. Hosp.*, 765 F. App'x 699, 703–704 (3d Cir. 2019) (quoting *Dougherty v. Harper's Magazine Co.*, 537 F.2d 758, 761 (3d Cir. 1976)). He had the opportunity to respond to Great American's motion, (ECF No. 92), which even exceeded—without leave—the Court's page limit, *see* The Honorable Gerald J. Pappert Policies and Procedures II.D.3 (last updated June 2025). He filed seven additional letters, notices and motions with the Court after filing his response. (ECF Nos. 94, 96, 97, 100, 106, 112, 113.) And he was given the opportunity to orally argue his case, which is not necessarily required under the Due Process Clause. *See FCC v. WJR, The Goodwill Station, Inc.*, 337 U.S. 265, 276 (1949) ("[T]he right of oral argument as a matter of procedural due process varies from case to case in accordance with differing circumstances, as do other procedural regulations."); *Berger*, 765 F. App'x at 703–04 ("Berger had an opportunity to be heard through his extensive briefing, which the District Court carefully considered. Therefore, the absence of oral argument did not deny him procedural due process."). Berger has had plenty of opportunities to be heard, and the Court has certainly heard enough of him.

Nonetheless, Berger advances several confounding arguments. He first contends that he cannot be subject to sanctions because he "was not a party to these proceedings." (Resp. to Mot. for Sanctions at 1.) Rather, he asks the Court to institute a "separate action" with Berger as "a named party, where he may appeal to a jury in defense against the instant charges." (*Id.* at 2.) The apparent reason for this

5

extraordinary request is Berger's belief that the "Judicial Machinery itself has been perverted to undermine the public interest," leaving him "largely alone in his endeavors to pursue the true intent and purpose of the justice system." (*Id.* at 17.) Absent a jury trial, he also contends he is entitled to an evidentiary hearing. (*Id.* at 2, 14, 15.) He points to no legal support—nor could he—for his belief that the Court can or should initiate a separate civil action in his name. Nor does he have any support for his contention that he is entitled to a jury trial or a full evidentiary hearing. Rather, there is no right to a jury trial in sanctions proceedings and an evidentiary hearing is not required when sanctions are based, as here, on a complete record, including "the pleadings, briefs, the various exhibits submitted in support of the motion for sanctions, and statements from counsel at the hearing." *Haviland v. Specter*, 561 F. App'x 146, 149–50 (3d Cir. 2014).[2]

Finally, because Berger claims that Great American's Motion "does not actually make clear the justification or the basis for the motion," (Resp. to Mot. for Sanctions at 12), he requests—again without legal authority—"something resembling a Bill of Particulars that specifically articulates the alleged factual predicate warranting the proposed sanctions," (Aug. 01, 2025 Notice at 3–4, ECF No. 106). Nonsense. The Due Process Clause requires that a sanctions motion provide "notice of the legal rule on which the sanctions would be based, the reasons for the sanctions, and the form of the potential sanctions." *In re Tutu Wells Contamination Litig.*, 120 F.3d 368, 379 (3d Cir.

---

[2] Similarly, a week after oral argument, Berger filed a motion asking the Court to grant him permission to depose defense counsel Glen Kimball. (ECF No. 113.) To the extent there are emails between Berger and Kimball that are relevant to this sanctions motion, (*id.* at 4–5), Berger had every opportunity to submit them. In any event, Kimball's views of Berger's claims are irrelevant and the Court denies the motion.

1997); *see also Martin v. Brown*, 63 F.3d 1252, 1262-63 (3d Cir. 1995) ("With regard to sanctions, particularized notice of the grounds for the sanction under consideration is generally required."). Great American's Motion makes clear that it seeks attorneys' fees under both Rule 11 and the "Federal Cost Statute, 28 U.S.C. § 1927," (Mot. at 15, 17), and details the specific conduct it asks the Court to sanction, discussed more fully *infra* Part III, (*id.* at 4–20).

### III

### A

A court may order "[a]ny attorney . . . who so multiplies the proceedings in any case unreasonably and vexatiously" to pay "the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. § 1927. Before doing so, however, a court must find that the "attorney has (1) multiplied proceedings; (2) in an unreasonable and vexatious manner; (3) thereby increasing the cost of the proceedings; and (4) [did] so in bad faith or by intentional misconduct." *In re Prosser*, 777 F.3d 154, 162 (3d Cir. 2015) (quoting *In re Prudential Ins. Co. Am. Sales Prac. Litig. Agent Actions*, 278 F.3d 175, 188 (3d Cir. 2002)).

"The language and purpose of the statute reflect that these sanctions are aimed at deterring lawyers' bad faith conduct that disrupts the administration of justice by multiplying proceedings," *id.* at 161, or conduct that "intentionally and unnecessarily delay[s] judicial proceedings." *LaSalle Nat'l Bank v. First Conn. Holding Grp.*, 287 F.3d 279, 288 (3d Cir. 2002). "A court imposing § 1927 sanctions must find bad faith, but that finding need not be made explicitly." *In re Prosser*, 777 F.3d at 162. "Indications of bad faith are findings that the claims advanced were meritless, that

7

counsel knew or should have known this, and that the motive for filing the suit was for an improper purpose such as harassment." *Id.* (quoting *In re Prudential*, 278 F.3d at 188).

B

Great American identifies a range of Berger's vexatious and unreasonable filings that multiplied proceedings by advancing meritless legal arguments.[3] These include his First and Second Amended Complaints,[4] Motion to Strike Defendants' Motions to Dismiss the First Amended Complaint, Notice of Voluntary Dismissal of State Law Claims, and associated letters and filings that all inappropriately sought to "transform a simple contractual dispute into a complex and highly speculative conspiracy." (Mem. Dismissing Sec. Am. Compl.at 1.)

1

First, Berger alleged in his First and Second Amended Complaints that Great American violated RICO. (First Am. Compl. ¶¶ 281–306); (Sec. Am. Compl.¶¶ 338–410.) As Judge Pratter explained in her opinion, (Mem. Dismissing Sec. Am. Compl. at

---

[3]   Some of Berger's conduct cited by Great American occurred before other tribunals, specifically in a related state-court case and other federal cases. (Mot. at 7–9, 11–13, 15.) Such conduct is beyond the purview of Section 1927. *See GRiD Sys. Corp. v. John Fluke Mfg. Co.*, 41 F.3d 1318, 1319 (9th Cir. 1994) ("§ 1927 limits a federal court's ability to sanction an attorney for conduct before another court."); *In re Case*, 937 F.2d 1014, 1023 (5th Cir. 1991) ("The language of § 1927 limits the court's sanction power to attorney's actions which multiply the proceedings in the case before the court."); *Cresswell v. Sullivan & Cromwell*, 922 F.2d 60, 69–70 (2d Cir. 1990) ("[W]e have seen no basis for concluding that § 1927 was intended to permit a litigant to institute a new lawsuit to collect excess costs and fees incurred in a prior litigation."); *Raymark Indus. v. Baron*, No. 96-7625, 1997 WL 359333, at *7 (E.D. Pa. June 23, 1997).

[4]   The Court does not consider Berger's initial complaint—which alleged only breach of contract and insurance bad faith against Great American—to have multiplied the proceedings. *See In re Schaefer*, 542 F.3d at 101 ("[Section] 1927 explicitly covers only the multiplication of proceedings that prolong the litigation of a case and likely not the initial pleading, as the proceedings in a case cannot be multiplied until there *is* a case."). Consistent with that reasoning, the Court will exclude Great American's initial motion to dismiss, (ECF No. 5), from the future sanctions award.

12–13), these claims were patently frivolous.[5]  Berger obfuscated by spinning a conspiratorial web from a straightforward dispute, but at the end of the day, his RICO claims were chimerical.  To start, he alleged wire fraud as the predicate racketeering activity, which requires allegations of a scheme to defraud.  One such instance of alleged wire fraud was Great American's purportedly undisclosed affiliated business relationship with KW Philly, which Berger contends compromised the fiduciary obligations both entities supposedly owed to the Plaintiffs.  *See* (*id.* at 12–13).  This allegation failed to "plead with particularity the circumstances constituting fraud or mistake," Fed. R. Civ. P. 9(b), and relied on the "incorrect assumption that an alleged breach of contract implies that the breaching party must have fraudulently entered into the contract in the first place."  (Mem. Dismissing Sec. Am. Compl. at 13.)

Next, Berger alleged that Great American employees engaged in wire fraud by sending various e-mails to the Plaintiffs and to a township tax assessor purportedly misrepresenting that the Development Fee was a "variation of the taxes for 2020." (Sec. Am. Compl. ¶¶ 391–99.)  But the e-mail chains at issue, (ECF No. 39-6, Exs. 19, 20 & 32), contained no such misrepresentations, *see* (Mem. Dismissing Sec. Am. Compl. at 15–17).[6]  Rather, Berger was misrepresenting facts in another attempt to fit a square breach-of-contract peg into a round RICO hole.

---

[5]   Berger contends that it would be inappropriate to sanction him on the theory that "because the previous Judge granted [Great American's] motion to dismiss, the Plaintiffs and their Counsel have, *ipso facto*, committed a violation of [Section 1927] by bringing frivolous claims." (Resp. to Mot. for Sanctions at 12.)
   That is true; many complaints brought in good faith are dismissed for failure to state a claim while not being subject to sanctions.  But that is not what Berger did.  As explained in the Court's May 2024 opinion, his filings—from top to bottom—disfigured beyond recognition the facts and the law for the purpose of delaying these proceedings.

[6]   Berger also cited e-mails as instances of wire fraud that allegedly misrepresented that Great American would "retain their own attorney to compel payment." (Sec. Am. Compl. ¶¶ 397–98.)  But

9

Berger attempted to satisfy RICO's relatedness and continuity requirements by conclusorily alleging that Great American's breach of contract was its "regular way of doing business" and thus had "open-ended continuity." (Sec. Am. Compl. ¶¶ 346, 362.) Such allegations are plainly insufficient to nudge the RICO claim "across the line from conceivable to plausible." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007);[7] *see Klineburger*, 2017 WL 1550013, at \*8 (declining to presume as true the conclusory allegation that defendant "has been involved in similar transactions . . . with the exact same end result"); *Kehr Packages v. Fidelcor, Inc.*, 926 F.2d 1406, 1418 (3d Cir. 1991) ("[T]he allegations in the amended complaint do not indicate that fraud was 'a regular way of doing business' for any defendant."); *Goren v. New Vision Int'l*, 156 F.3d 721, 729 (7th Cir. 1998) ("[W]e have repeatedly held that a plaintiff's conclusory allegations that defendants also defrauded unidentified others are not enough to plead the requisite pattern of fraud.") (quotations omitted).

All told, Berger's RICO claims were a transparently bogus mechanism to manipulate his way into federal court by converting a simple breach-of-contract claim into a complex RICO conspiracy. Courts have consistently rejected such efforts. *See, e.g.*, *Annulli v. Panikkar*, 200 F.3d 189, 200 (3d Cir. 1999) ("We will not read language

---

these allegations, again, were "nothing more than a breach of contract claim that Plaintiff has unsuccessfully attempted to morph into a civil RICO claim." *Klineburger v. Kell*, No. 16-5637, 2017 WL 1550013, at \*9 (E.D. Pa. May 1, 2017).

[7]     While on the subject of patently frivolous legal arguments, Berger repeatedly contended that the federal pleading standard set out in *Twombly* and *Iqbal* somehow does not apply to state-law claims. (Resp. to Mot. to Dismiss Sec. Am. Compl. at 13–14, ECF No. 50); (Mot. to Dismiss Sec. Am. Compl. Oral Argument Tr. at 30:11–22); (Resp. to Mot. for Sanctions at 22–25) (citing the *Twombly* dissenting opinion and arguing that the pleading standard set out by the majority is "completely without merit"). *See Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009) ("Our decision in *Twombly* expounded the pleading standard for 'all civil actions.'") (quoting Fed. R. Civ. P. 1); *Gasperini v. Ctr. for Humanities*, 518 U.S. 415, 427 (1996) ("Under the *Erie* doctrine, federal courts sitting in diversity apply state substantive law and federal procedural law.").

into [RICO] to federalize every state tort, contract, and criminal law action."); *Banks v. Wolk*, 918 F.2d 418, 424 (3d Cir. 1990) (rejecting RICO claim where allegations "amount[ed] to nothing more than an isolated incident of 'garden variety' real estate fraud"); *cf. Santa Fe. Indus. v. Green*, 430 U.S. 462, 477 (1977) (rejecting reading of federal securities law that would cover corporate misconduct where "the essence of the complaint is that shareholders were treated unfairly by a fiduciary"). Defendants' multiple motions to dismiss, supported by clear legal authority, mean Berger "knew or should have known" that his RICO claims were meritless. *In re Prudential*, 278 F.3d at 188.

2

The Court dismissed Berger's RESPA claims as untimely under that statute's one-year limitations period, *see* 12 U.S.C. § 2614, and well-settled Third Circuit precedent that the RESPA limitations period "runs 'from the date of the occurrence of the violation,' which begins at the closing of the loan." *Cunningham v. M&T Bank Corp.*, 814 F.3d 156, 160 (3d Cir. 2016) (citing *Drennan v. PNC Bank, NA*, 622 F.3d 275, 281 (3d Cir. 2016)). Berger first asserted the RESPA claims in the First Amended Complaint, twenty-nine months after closing, so the claims were clearly foreclosed under the statute of limitations.[8]

Berger's inclusion of a time-barred RESPA claim in his First Amended Complaint cannot alone merit sanctions because the statute of limitations is an affirmative defense that Great American could've waived or forfeited. *See Temple v.*

---

[8] Curiously, Berger claimed in his response to Great American's motion to dismiss that the above Third Circuit precedential opinions are somehow not authoritative. (Resp. to Mot. to Dismiss Sec. Am. Compl. at 39–40.)

11

*Ford*, 790 F.2d 342, 349 (3d Cir. 1986). However, Great American raised the statute of limitations defense in its motion to dismiss the First Amended Complaint, (Mot. to Dismiss First Am. Compl. ¶¶ 111–14), putting Berger on notice that the limitations period was at issue. Instead of dropping the frivolous claim, Berger quadrupled down; he stretched the one RESPA count in the First Amended Complaint into four counts in his second amended pleading. (Sec. Am. Compl. ¶¶ 249–85, 327–37.) That was vexatious.

3

Knowing how frivolous his federal RICO and RESPA claims really were, Berger concocted a strategy to keep his $2,000 case in federal court by invoking the Court's diversity jurisdiction. He alleged several theories of damages, such as lost revenues at Plaintiffs' dental practice, a double-recovery theory, emotional distress, and treble damages, each of which was conclusory and meritless. *See* (Mem. Dismissing Sec. Am. Compl. at 25–26, 29). The Court credited his claim for interest, which potentially increased the amount-in-controversy by $367.91, (*id.* at 26–28), and compensatory damages for unspecified tax obligations totaling $816.74, (*id.* at 29). That left Berger arguing that the remainder of the amount-in-controversy requirement was satisfied by punitive damages and attorneys' fees. But litigants are not "permitted to shoehorn what is in truth a local action into federal court through extravagant punitive damages claims that are permitted only by virtue of the federal system's liberal pleading rules." *Neff v. General Motors Corp.*, 163 F.R.D. 478, 483 (E.D. Pa. 1995) (citing *Kahal v. J.W. Wilson & Assocs., Inc.*, 673 F.2d 547, 549 (D.C. Cir. 1982)). "[T]his logic applies with equal force to a claim for attorneys' fees." *Id.* *See also Sacchi v. ABC Fin. Servs.*, No.

14-1196, 2014 WL 4095009, at *6 (D.N.J. Aug. 18, 2014) ("[T]o satisfy the jurisdictional minimum, this Court would have to award a preposterously high amount of attorneys' fees and costs in connection with a nominal amount of compensatory damages of $30—which is inconsistent with the purpose of the amount in controversy requirement."); *Flail v. Travelers Cos.*, Civ. No. 98-1254, 1998 WL 709296, at *2–4 (E.D. Pa. Oct. 6, 1998).

4

Great American next points to Berger's repeated claim that the Defendants were somehow "abusive, frivolous, fraudulent and vexatious" by filing motions to dismiss his many complaints.  (ECF No. 42); (Mot. at 6, 9 & 10); *see also* (ECF No. 66).  Berger made this contention most prominently in his "motion to strike" the Defendants' motions to dismiss the First Amended Complaint, where he argued the Defendants "utterly misuse the 12(b)(6) motion process" in an attempt to "gain an unfair advantage in the litigation."  (Mot. to Strike ¶ 45, ECF No. 26.)  This filing was frivolous, as "[m]otions to strike under Fed. R. Civ. P. 12(f) '[strike] pleadings not dispositive motions.'"  *Blessing Auto Repair, Inc. v. Pa. State Police*, No. 20-6569, 2021 WL 2948845, at *7 (E.D. Pa. July 14, 2021) (quoting *Bond v. ATSI/Jacksonville Job Corps Ctr.*, 811 F. Supp 2d 417, 421 (D.D.C. 2011)).  "A motion to dismiss is not a pleading, therefore a motion to strike a motion to dismiss would be inappropriate."  *Id.* (citing *Personacare of Reading, Inc. v. Lengel*, No. 16-1965, 2017 WL 1036154, at *2 (E.D. Pa. Mar. 17, 2017)).  And Berger knew this was frivolous, as he later acknowledged "there is no specific Rule that would permit a Court to strike a motion to dismiss."  (ECF No. 42.)

13

Berger renewed his attack on Defendants' motions to dismiss by citing them as examples of racketeering activity to make out his RICO claim. (Sec. Am. Compl. ¶¶ 401, 406.) But again, this assertion was unaccompanied by particular allegations of the circumstances constituting fraud as required by Rule 9(b). (Mem. Dismissing Sec. Am. Compl. at 17–18.) What's worse, such frivolous allegations undermine the sanctity of the litigation process. Berger's lack of civility, which was apparent throughout the course of this litigation, "is an example of why lawyers are held in such low esteem by the public and reflects why courts and bar associations across the country are seeking to prevent such conduct." *MKS Instruments, Inc. v. Advanced Energy Indus.*, No. 03-469, 2005 U.S. Dist. LEXIS 55484, at *17–18 (D. Del. Aug. 11, 2005).

5

Finally, Great American cites Berger's "notice of voluntary dismissal" of Plaintiffs' state-law claims, (Not. of Vol. Dismissal), which he filed four days after oral argument on the motions to dismiss. Putting aside the suspect timing, this filing was specious, as voluntary dismissal under Rule 41(a) "does not apply where the plaintiff attempts to dismiss individual 'claims,'" because the rule applies only to "an action." *Waris v. Mackey*, No. 09-1103, 2009 WL 4884204, at *4 (E.D. Pa. Dec. 15, 2009); *see also Noga v. Fulton Fin. Corp. Emp. Benefit Plan*, 19 F.4th 264, 271 n.3 (3d Cir. 2021). After KW Philly pointed this out, (Resp. to Not. of Vol. Dismissal, ECF No. 60), Berger—ignoring the case law—doubled down by claiming the notice "was self-executing as a matter of substantive right," (ECF No. 67), and engaged in a seven-page exercise of advanced sophistry to convince the Court to ignore the plain text of Rule 41(a) and the clear guidance from the court of appeals. *See also* (ECF No. 72).

14

C

Each of Berger's above filings vexatiously and unreasonably multiplied these proceedings. *See Vexatious*, *Black's Law Dictionary* (12th ed. 2024) (defining "vexatious" as conduct "without reasonable or probable cause or excuse; harassing; annoying"). Berger acted in bad faith throughout, as evidenced by the Court's findings "that the claims advanced were meritless, that counsel knew or should have known this, and that the motive for filing the suit was for an improper purpose such as harassment." *In re Prudential*, 278 F.3d at 188. But the evidence of his bad faith does not end there. For example, in *just* his response to Great American's motion to dismiss, Berger accused counsel of "engag[ing] in a perverse pattern of abusive litigation tactics," "mendacious cherry-picking," "falsification of the factual content," "utter hypocrisy," seeking "to gain an unfair advantage in this case by tainting the Court's opinion of the merits of the Plaintiffs' claims by mischaracterizing the allegations," "harassing the Plaintiffs with having to respond to wholly unnecessary filings," "abuse of process," "callously refus[ing] to offer any attorneys fees," and "engag[ing] in [litigation] conduct that clearly amounts to bad faith." (Resp. to Mot. to Dismiss Sec. Am. Compl. at 3, 11, 13, 26.)

Judge Pratter warned Berger at the oral argument on Defendants' motions to dismiss that his "repeated accusations of misconduct" against defense counsel "really do not belong in any kind of a decent advocacy document." (Mot. to Dismiss Sec. Am. Compl. Oral Argument Tr. at 28:12–18, ECF No. 70.) Rather than heeding Judge Pratter's admonition, he turned his vitriol toward her. On June 6, 2024, weeks after Judge Pratter's death, Berger submitted a letter criticizing her "demeaner and

15

attitude" and accusing her of "indisputable" and "obvious error."  (ECF No. 85.)  Then, in his response to Great American's motion for sanctions, he described the Court's prior opinion as "patently erroneous and bogus" and accused Judge Pratter of "apparent contempt for Berger," "disguis[ing]" as legal conclusions her "thinly veiled attempts at resolving factual disputes in favor of the Defendants," "usurp[ing] the role of the jury," allowing her opinion to be "poisoned by the perverse litigation tactics of the Defendants," not being a "truly impartial tribunal," "completely ignor[ing] entire pages worth of argument sections," and "pretending to be constrained by the allegations."[9] (Resp. to Mot. for Sanctions at 2, 7, 8, 10, 24.)  Worse yet, Berger filed a "notice" on August 1, 2025 refusing to use Judge Pratter's name, instead referring to her three times as the "dead Judge."  (ECF No. 106); *see also* (Sanctions Oral Arg. Tr. at 41:22–42:6.)

Berger's bad faith misconduct and clear disregard for the Judiciary came to a head at the oral argument on Great American's sanctions motion.  Instead of using the opportunity to explain why his conduct was not vexatious or unreasonable, Berger attempted to re-litigate Judge Pratter's decision and the Third Circuit's dismissal of his appeal.  The Court attempted, unsuccessfully, to refocus Berger on defending himself against the sanctions motion, but he incessantly interrupted, obfuscated, gesticulated, rolled his eyes and laughed.  *See generally* (Sanctions Oral Argument Tr.).

### D

After a court makes a finding of bad faith, "the appropriateness of assessing attorneys' fees against counsel under section 1927 is a matter for the district court's

---

9       In his response to the sanctions motion, Berger also claims the Court at present is unable to sit as an impartial tribunal. (Resp. to Mot. for Sanctions at 25–26.)

16

discretion." *Ford*, 790 F.2d at 347 (citing *Baker*, 764 F.2d at 210). "To properly exercise this discretion, the district court must balance the equities between the parties and may award attorney's fees whenever overriding considerations indicate the need for such a recovery." *Id.* "Thus, a district court may, in its discretion, refuse to award attorney's fees even where it finds the existence of bad faith, if, in balancing the equities, it nevertheless determines that an award in a particular case would not serve the interests of justice." *Id.* Further, if the Court grants sanctions under § 1927, it "must only impose costs and expenses that result from the particular misconduct." *In re Prudential*, 278 F.3d at 188. "Moreover, these costs and expenses are limited to those that could be taxed under 28 U.S.C. § 1920." *Id.*; *see also Goodyear Tire & Rubber Co. v. Haeger*, 581 U.S. 101, 107 (2017) (describing the "causal link" required between "misconduct and fees" under § 1927).

Great American shall file a petition, to which Berger may respond, detailing its costs, expenses and attorneys' fees incurred because of Berger's filings described above and those that fairly fall within their domain. *See* (ECF Nos. 9, 26, 27, 33, 35, 36, 39, 42, 46, 50, 57, 58, 66, 67, 72.) The Court will consider the petitions and any response, balance the equities and enter the appropriate Order.

IV

Finally, pursuant to Local Rule of Civil Procedure 83.6(V)(A), the Court refers Berger to Chief Judge Beetlestone to issue an order to show cause why his misconduct should not warrant discipline. *See, e.g.*, *Office of Disciplinary Counsel v. Surrick*, 749 A.2d 441, 179 (Pa. 2000) ("Respondent's personal views on judicial reform cannot excuse his reckless conduct in bringing unsubstantiated accusations against individual

17

members of the judiciary."); Pa. R. Prof. Conduct 3.1 (providing a "lawyer shall not bring or defend a proceeding, or assert or controvert an issue therein, unless there is a basis in law and fact for doing so that is not frivolous, which includes a good faith argument for an extension, modification or reversal of existing law"); Pa. R. Prof. Conduct 3.3(a)(1) ("A lawyer shall not knowingly make a false statement of material fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer.").

    An appropriate Order follows.

BY THE COURT:

*/s/ Gerald J. Pappert*
Gerald J. Pappert, J.