**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

BRYAN R. KATZ and KRISTINE J. CONCEPCION,
*Plaintiffs*,

v.

GREAT AMERICAN ABSTRACT, LLC, et. al.,
*Defendants*.

CIVIL ACTION
NO. 23-1188

**Pappert, J.** **July 28, 2026**

**MEMORANDUM**

After finding Daniel A. Berger unreasonably and vexatiously multiplied the proceedings, the Court granted Great American's motion for sanctions under 28 U.S.C. § 1927 and ordered Berger to pay Great American's reasonable excess costs, expenses and attorneys' fees associated with fifteen specific docket entries. The Court now imposes on Berger $27,248.50 in sanctions.

I

Judge Pratter and the Court both previously explained the case's history, and Berger's conduct, in detail. *See generally* (Mem. Dismissing Sec. Am. Compl., Dkt. No. 76); (Mem. Granting Mot. for Sanctions, Dkt. No. 114). Great American filed a motion for sanctions under 28 U.S.C. § 1927, (*id.* at 4 & n.1), which the Court granted after addressing Berger's various unusual arguments, *see* (Order Granting Sanctions, Dkt. No. 115). The Court ordered Great American to file a petition itemizing its excess costs, expenses and attorneys' fees associated with specifically identified filings, (*id.* ¶ 3), which it submitted in September of 2025, (Great American's Fee Pet., Dkt. No. 123).

Berger filed an interlocutory appeal before objecting to the petition. (Dkt. No. 124.) The Third Circuit Court of Appeals dismissed the appeal on July 15, 2026 for failure to timely prosecute. (Dkt. No. 130.)

Great American seeks payment for legal fees of $28,061.50 and costs of $372.00. (Great American's Fee Pet. at 7.) In support of its petition, Great American submitted invoices with costs and itemized billing entries. (*Id.* ¶¶ 17, 20); (Fee Pet. Exs. B–D, Dkt. Nos. 123-2–4.) Its attorney, Dean Weisgold, has practiced law for forty years, graduated from the University of Pennsylvania School of Law, specializes in commercial litigation and has represented Great American for approximately ten years. (Weisgold Aff. ¶¶ 1–3, 5, Dkt. No. 123.) Weisgold charged $375.00 per hour for his representation until May 14, 2024, when his hourly rate increased to $395.00. (*Id.* ¶ 14.) As the Court instructed, Great American excluded fees associated with its initial motion to dismiss and narrowed its fee petition to the 73.7 hours Weisberg billed in connection with filings the Court identified. *See* (Mem. Granting Sanctions, at 8 n. 4); (Order Granting Sanctions ¶ 2); (Weisgold Aff. ¶¶ 17 & 19). Berger's "objections" primarily attempt to relitigate the sanctions award rather than the calculation of fees. (Berger's Objs., Dkt. No. 125.)

II

Once a district court decides sanctions are warranted under 18 U.S.C. § 1927, it must calculate the proper amount to impose. In exercising its wide discretion to fix the amount, the Court may award only those attorney's fees and "costs and expenses that result from the particular misconduct." *In re Prudential Ins. Co. Am. Sales Prac. Litig. Agent Actions*, 278 F.3d 175, 188 (3d Cir. 2002). The attorneys' fees must be

reasonable, and the costs and expenses limited to those "that could be taxed under 28 U.S.C. § 1920." *Id.* The Court must "balance the equities between the parties" and ensure sanctions serve "the interests of justice." *Id.*

III

A

The starting point for calculating attorneys' fees is the "lodestar," which is the product of the "number of hours reasonably expended on the litigation" and "a reasonable hourly rate." *McKenna v. City of Philadelphia*, 582 F.3d 447, 455 (3d Cir. 2009) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)). Reasonable hourly rates are based on prevailing market rates in the relevant community. *Blum v. Stenson*, 465 U.S. 886, 895 (1984). Courts consider "the experience and skill of the attorneys" compared to the rates of "comparable lawyers in the private business sphere." *Student Pub. Int. Rsch. Grp. of N.J., Inc. v. AT & T Bell Lab'ys*, 842 F.2d 1436, 1447 (3d Cir. 1988). The Third Circuit Court of Appeals "has approvingly cited" the fee schedule established by Community Legal Services, Inc., and courts in this district have found it is "a fair reflection of the prevailing market rates in Philadelphia." *Maldonado v. Houstoun*, 256 F.3d 181, 187 (3d Cir. 2001) (citation modified and omitted). It is the petitioner's burden to show its rates and hours are reasonable by submitting "evidence supporting the hours worked and rates claimed." *Hensley*, 461 U.S. at 433.

Weisgold's rates of $375.00 and 395.00 per hour (averaging $380.75 for purposes of Great American's fee request) are reasonable, and Berger does not challenge them. Weisgold is experienced, having practiced law at two firms before starting his own practice in 1999. (Weisgold Aff. ¶ 2.) He has been a federal arbitrator and mediator

and served as a hearing officer for the Pennsylvania Disciplinary Board in addition to various other experience over his nearly forty years in practice. (*Id.* ¶¶ 2, 6–12.) As of January of 2023, attorneys with over twenty-five years of experience in the Philadelphia area can bill between $735.00 and $850.00 per hour, (*id.* ¶ 13); (CLS Att'y Fees, Fee Pet. Ex. A, Dkt. No. 123-1), and he charged well below that rate.

B

The Court "review[s] the time charged, decide[s] whether the hours set out were reasonably expended for each of the particular purposes described and then exclude[s] those that are 'excessive, redundant, or otherwise unnecessary.'" *Pub. Int. Rsch. Grp. of N.J., Inc. v. Windall*, 51 F.3d 1179, 1188 (3d Cir. 1995) (quoting *Hensley*, 461 U.S. at 433–34). This analysis "go[es] line, by line, by line through the billing records supporting the fee request." *Evans v. Port Auth. of N.Y. & N.J.*, 273 F.3d 346, 362 (3d Cir. 2001) (citation modified). The Court will reduce an award only "in response to specific objections made by the opposing party." *Interfaith Cmty. Org. v. Honeywell Int'l, Inc.*, 426 F.3d 694, 711 (3d Cir. 2005), *as amended* (Nov. 10, 2005). The opposing party must object with "sufficient specificity to give the fee applicants notice that they must defend the contested portion of their fee petition." *Bell v. United Princeton Props., Inc.*, 884 F.2d 713, 715 (3d Cir. 1989). District courts "engage in a fair amount of 'judgment calling' based on [their] experience with the case," and "retain[] a great deal of discretion in deciding what a reasonable fee award is, so long as any reduction is based on objections actually raised by the adverse party." *Id.* at 721 (citation omitted).

The fee petition includes eighteen invoices counsel submitted to Great American between April 28, 2023 and September 8, 2025 with itemized billing entries describing

the work performed. (Weisgold Aff. ¶¶ 16–19); (Fee Pet. Exs. B & C, Dkt. Nos. 123-2–3). Great American attributes 73.7 hours ($28,061.50) to filings the Court identified in its Order Granting Sanctions. (Dkt. No. 115 ¶ 2.) These are a subset of its total invoiced amount; Great American excludes from its fee petition entire invoices or specific line items. For example, Great American excludes every line item from invoices dated April 28, 2023, May 15, 2024, September 5, 2024, October 2, 2024, November 26, 2024 and January 28, 2025. *See* (Weisgold Aff. ¶ 16); (Invoices, Dkt. No. 123-2 at 2, 20, 25, 27, 29, 31). Other invoices exclude only a subset of billing entries. *See, e.g.*, (June 22, 2023 Invoice, Dkt. No. 123-2 at 4 (excluding from petition $1,125.00 of $8,212.5 invoiced)); (August 15, 2023 Invoice, Dkt. No. 123-2 at 7 (excluding from petition $2,250.00 of $3,675.00 invoiced)); (November 29, 2023 Invoice, Dkt. No. 123-2 at 11 (excluding from petition $450.00 of $5,062.50 invoiced)); (April 10, 2024 Invoice, Dkt. No. 123-2 at 18 (excluding from petition $3,187.50 of $4,012.50 invoiced)).

### 1

Great American's spreadsheet summary of its requested fees contains two discrepancies as compared to the supporting invoices. *See* (Weisgold Aff. ¶ 16.) The January 5, 2024 invoice includes $600.00 of attorneys' fees resulting from 1.6 billed hours, but the spreadsheet in Weisgold's affidavit lists $500.00—a discrepancy of $100.00 in Berger's favor. *Contrast* (1/5/24 Invoice, Dkt. No. 123-2 at 13), *with* (Weisgold Aff. ¶ 16). The February 27, 2024 invoice includes $1,050.00 of attorneys' fees resulting from 2.8 hours of work, but Weisgold's affidavit lists $1,080.00—a discrepancy of $30.00 in Great American's favor. *Contrast* (2/27/24 Invoice, Dkt. No. 123-2 at 15), *with* (Weisgold Aff. ¶ 16). The Weisgold affidavit is free of other apparent

computational or typographical errors. The Court identifies the discrepancies only to avoid confusion. The total figure Great American requests—$28,061.50—is consistent with the invoices and the billed hours they describe.

2

Although the Court may not "decrease a fee award based on factors not raised at all by the adverse party," *Loughner v. Univ. of Pittsburgh*, 260 F.3d 173, 178 (3d Cir. 2001), it is nonetheless satisfied Great American complied with the Court's August 18, 2025 order to itemize its "excess costs, expenses and attorneys' fees . . . associated with ECF Nos. 9, 26, 27, 33, 35, 36, 39, 42, 46, 50, 57, 58, 66, 67, 72," (Order Granting Sanctions ¶¶ 2–3).

Great American's June 22, 2023 invoice ($7,087.50 requested) includes 18.9 hours of work expended as a result of plaintiffs' amended complaint, (Dkt. No. 9), which Great American moved to dismiss on June 22, 2023, (Dkt. No. 24). The fifteen billing entries describe in sufficient detail reasonable work to produce a roughly thirty-page document.

The August 15, 2023 invoice ($1,425.00 requested) includes 3.1 hours of work associated with plaintiffs' motion to strike, (Dkt. No. 26), and 0.70 hours related to plaintiff's amended complaint, (Dkt. No. 9). All these hours are reasonable—Great American's response to plaintiff's motion to strike spans more than twenty pages. (Dkt. No. 32)

The September 18, 2023 invoice ($4,087.50 requested) includes 10.9 hours associated with plaintiffs' second amended complaint. (Dkt. No. 39.) Great American filed its motion to dismiss on September 12, 2023. (Dkt. No. 40.) The hours Weisgold

spent reviewing the second amended complaint and preparing the motion to dismiss include some arguments lifted from the motion to dismiss plaintiffs' first amended complaint. *Compare* (Dkt. No. 24), *with* (Dkt. No. 40). Nonetheless, the Court considers 10.9 hours a reasonable amount of time. To the extent counsel re-used sections he previously submitted, he did so thoughtfully and expended around half as much time on the second motion to dismiss as he did the first.

The November 29, 2023 invoice ($4,612.50 requested) also chronicles reasonable hours. Its fifteen billing entries describe 12.3 hours of work related to Berger's September 22, 2023 letter, (Dkt. No. 42), Great American's nine-page reply in support of its motion to dismiss plaintiffs' second amended complaint, (Dkt. No. 53), and preparation for the November 28, 2023 oral argument before Judge Pratter, (Dkt. No. 63), among other things.

So too the January 5, 2024 invoice ($500.00 requested), which describes Weisgold's 1.6 hours of work associated with plaintiffs' notice of voluntary dismissal, (Dkt. No. 58), and the February 27, 2024 invoice ($1,080.00 requested), describing 2.8 hours of work related to plaintiffs' supplement to their notice of voluntary dismissal, (Dkt. No. 67), and Great American's reply brief, (Dkt. No. 69). [1]

The same goes for the April 10, 2025 invoice ($825.00 requested), which includes three billing entries totaling 2.2 hours. Those entries relate to review of the November

[1] As explained, the January 5 invoice is associated with an apparent typographical error in Wesigold's affidavit, which requests $500.00 although the billing entries amount to $600.00. *See supra* subsection III.B.1. Weisgold's affidavit contains a $30.00 error related to the February 27 invoice. *Id.* Neither of these discrepancies matter, because Great American correctly calculated its total request of $28,061.50 and because that figure corresponds to the 73.7 hours counsel expended.

The February 27 invoice also includes $372.00 of costs which the Court addresses *infra* Section III.D.

28, 2023 hearing transcript, a letter to Judge Pratter and preparation of a three-page supplemental brief. (Dkt. No. 74.)

Three invoices dated April 30, 2025 ($79.00 requested), August 11, 2025 ($2,014.50 requested) and September 8, 2025 ($3,002.00 requested) pertain to Great American's motion for sanctions, related correspondence, briefing and oral argument. Ten billing entries across the three invoices describe 12.9 hours of work—a reasonable amount, given the duration of this case and the voluminous conduct ultimately determined sanctionable by the Court.

The July 2, 2024 ($2,014.50 requested) and May 29, 2025 ($1,264.00 requested) invoices also relate to Great American's motion for sanctions. They describe 8.3 hours of work and are discussed separately because Berger specifically objects to three of the invoices' billing entries. *See infra* Subsection III.C.5.

C

In response to Great American's fee petition, Berger repeats a disjointed litany of largely irrelevant arguments. *See generally*, (Objs. to Fee Pet., Dkt. No. 125). Despite previous admonitions he continues to ignore the Court's policies, *see* (Mem. Granting Sanctions, at 5), filling thirty-one pages with sometimes incoherent ramblings inappropriately focused on the Court's previous decision to award sanctions.

1

He first objects to Great American's entire fee request, contending Judge Pratter's decisions "constitute prior rulings that are 'final' and 'binding' and necessarily bar[] [Great American] from seeking to have this Court now reverse these earlier rulings by concluding that Berger was prohibited from submitting various filings in the

first place." (Berger's Objs., at 1–2.) Great American seeks no such "reversal." As the Court instructed, its petition itemizes attorneys' fees associated with filings the Court identified. *See* (Order Granting Sanctions ¶ 2.) What's more, Berger frequently misrepresents the record. For example, he claims "Judge Pratter also ruled that *any* award of reasonable attorneys' fees, even in the case of bad faith . . . had to be in proportion to the underlying damages . . . otherwise this 'would be to reward overlawyering of the case.'" (Berger's Objs., at 3 (quoting Mem. Dismissing Sec. Am. Compl, at 31–32).) That's not true and Berger knows it. He cites a portion of her memorandum opinion dismissing his client's second amended complaint in which she criticized *his* "exorbitant request for over $100,000 in fees"—as *plaintiff's counsel*—in a case with "actual damages" of only $2,062.47. (Mem. Dismissing Sec. Am. Compl., at 31.) Judge Pratter explained:

> [F]ocusing only on . . . the jurisdictional damages threshold, the Court would need to award the plaintiffs' attorney over twenty-five times the plaintiffs' actual damages merely to meet that threshold. The Court can conclude to a legal certainty that it would not award over $50,000 in fees on a breach-of-contract action worth roughly $2,000.

(*Id.*) And finally, to the extent Berger's objections attack the Court's award of sanctions against him, he either waived his arguments for failure to include them in his response to Great American's Motion for Sanctions or inappropriately challenges the merits of the Court's decision. *See United States v. Cruz*, 757 F.3d 372, 387–88 (3d Cir. 2014) (deeming waived "arguments that were raised for the first time in [a] Reply Brief."); *see also infra* subsection III.B.4.

2

Berger next contends the Court cannot consider the fee schedules Great American attached to their petition because Great American did not include them in its

motion for sanctions or initial disclosures. (Berger's Objs., at 14.) He provides no legal authority to support the nonsensical suggestion that Great American should have forecast his misconduct when the case began. And Great American did not need to calculate fees when it filed its motion for sanctions. As the Court explained, the motion sufficiently "[made] clear that it [sought] attorneys' fees . . . and detail[ed] the specific conduct it [asked] the Court to sanction." (Mem. Op. Granting Sanctions, at 7). Nor does Berger's argument find support in other fee imposition statutes. *Cf.* Fed. R. Civ. P. 54, Advisory Committee Note, 1993 Amendment, Paragraph (2), Subparagraph (B) ("The rule does not require that the motion be supported at the time of filing with the evidentiary material bearing on the fees . . . What is required is the filing of a motion sufficient to alert the adversary and the court that there is a claim for fees, and the amount of such fees (or a fair estimate)."); *see also* (Great American's Mot. for Sanctions, at 9 n.1, Dkt. No. 78 ("To date, the legal fees incurred by Great Americans' counsel relating to Plaintiffs' claims exceed $40,000.00.")).

3

He also claims "fees are precluded based on unfair surprise" because "he *did nothing other than to advance the arguments that Judge Pratter explicitly stated he was allowed to advance*." (Berger's Objs., at 16.) Judge Pratter did not instigate Berger's vexatious conduct. Indeed, as the Court has already explained, she warned Berger his "repeated accusations of misconduct" against defense counsel "really do not belong in any kind of a decent advocacy document," (Mot. to Dismiss Sec. Am. Compl. Oral Arg. Tr. at 28:12–18, Dkt. No. 70), which prompted Berger to criticize her "demeaner [sic] and attitude" and accuse her of "indisputable" and "obvious error," (Dkt. No. 85). His

disrespect to Judge Pratter continued throughout various filings. *See* (Mem. Op. Granting Sanctions, at 15–16). Berger's suggestion that Judge Pratter somehow condoned or encouraged his conduct is patently ridiculous.

4

In Berger's fourth and fifth objections, he attempts to relitigate the Court's decision on Great American's sanctions motion by arguing he did not multiply the proceedings or act unreasonably or in bad faith. (Berger's Objs., at 17–21.) The time for contesting the imposition of sanctions has come and gone—objections to a fee petition challenge the amount of award, not the reasons the Court imposed sanctions. *See Angino v. Transunion, LLC*, No. 17-954, 2019 WL 8161110, at *1 (M.D. Pa. Nov. 25, 2019) ("Plaintiffs' objections largely attempted to re-litigate the merits of their case. We need not address those arguments, as they have been fully considered by this Court and the Third Circuit."); *see also Hogan v. Raymond Corp.*, 536 F. App'x 207, 213 (3d Cir. 2013) ("And [plaintiff] did not merely continue to challenge the amount of the award, but instead continued to contest the imposition of sanctions in the first place for reasons the District Court already had rejected."); *Watson v. City of Salem*, 934 F. Supp. 643, 666 (D.N.J. 1995) ("[T]his opportunity to challenge the amount of costs and fees claimed by the defendants is not an opportunity for Plaintiff's counsel to challenge the award of Rule 11 sanctions generally, since the issue was already joined in the motion before the court and now it has been adjudicated herein.").

5

Berger next argues Great American's fee petition improperly contains billing entries associated with its Rule 11 sanctions motion. (Objs. to Fee Pet. at 21.) As an

initial matter, Berger's "cross-petition for fees . . . under Rule 11" fails. *See* Fed. R. Civ. P. 11(c)(2) ("A motion for sanctions must be made separately from any other motion . . ."). The Court construes the arguments in his "cross-petition" as objections to Great American's fee petition associated with its Rule 11 motion. Here, for the first time, Berger objects with "sufficient specificity to give [Great American] notice that [it] must defend the contested portion of [its] fee petition." *Bell*, 884 F.2d at 715. Great American argues in response that it "made claims under both Rule 11 and 28 U.S.C § 1927" and, because the "types of relief awarded against attorneys are essentially the same," the Court should award fees associated with its Rule 11 motion. (Great American's Reply in Supp. of Fee Pet., at 5–6, Dkt. No. 126.)

True, work associated with Rule 11 and § 1927 sanctions overlaps, and Great American's eighteen-page motion for sanctions contains at least ten pages which apply equally to both Rule 11 and § 1927. *See generally*, (Great American's Mot. for Sanctions, at 4–13, Dkt. No. 78). The same goes for the twelve exhibits attached to that motion. But Great American conceded its motion under Rule 11 was "untimely under the so-called supervisory rule" and "failed to comply with Rule 11's safe-harbor provision." (Mem. Granting Mot. for Sanctions, at 4 n.1.) Therefore a portion of Weisgold's fees related to Rule 11 are "redundant[] or otherwise unnecessary." *See Pub. Int. Resch. Grp. of N.J., Inc. v. Windall*, 51 F.3d at 1188 (citation omitted). Berger objects to three billing entries related to Great American's Rule 11 motion:

| | Professional Services | Hrs/Rate | Amount |
|---|---|---|---|
| 5/15/2024 | Review opinion of Judge Pratter and prepare email to client | 0.60<br>395.00/hr | 237.00 |
| | Prepare Rule 11 motion against Plaintiffs and Plaintiffs counsel in federal court case | 2.80<br>395.00/hr | 1,106.00 |
| 5/6/2025 | Review response to motion for sanctions and prepare reply brief (District Court) | 3.20<br>395.00/hr | 1,264.00 |

*See* (Berger's Objs., at 26 & 28) (reformatted and cleaned up); *see also* (Great American's Fee Pet. Ex. B, July 2, 2024 and May 29, 2025 Invoices, Dkt. No. 123-2, at 22 & 36) (same). The Court will not reduce the first billing entry ($237.00), because it is not limited to, nor does it focus on, Rule 11 sanctions—reviewing Judge Pratter's opinion and related correspondence was reasonable. But because Great American's motion for sanctions and its reply in support thereof each contain portions exclusively dedicated to Rule 11 sanctions the Court will reduce hours related to the second ($1,106.00) and third ($1,264.00) billing entries by fifty percent each. *See generally*, (Great American's Mot. for Sanctions, at 13–16); (Great American's Reply in Supp. of Mot. for Sanctions, at 5–6, Dkt. No. 95). Although Rule 11 and § 1927 fundamentally address the same conduct, a fifty percent reduction of these billing entries accounts for "hours spent litigating claims on which [Great American] did not succeed[] that were distinct from the claims on which [it] did succeed." *See Loughner*, 260 F.3d at 178.

## 6

Berger finally argues the Court "does not have jurisdiction over the sanctions proceedings because [Great American's Motion for Sanctions] was not filed within a reasonable time of the specific filings that multiplied proceedings." (Berger's Objs., at

23.) Again, Great American's fee petition is to determine the *amount* of sanctions the Court already ordered Berger must pay.

D

Great American seeks $372.00 in costs it expended on transcripts of the July 21, 2023 and November 28, 2023 hearings before Judge Pratter. (Weisgold Aff. ¶ 20); (Great American's Fee Pet., Ex. D.) Berger does not object, and the costs are taxable under 28 U.S.C. § 1920(2) which permits "[f]ees for printed or electronically recorded transcripts necessarily obtained for use in the case." *See In re Prudential*, 278 F.3d at 175 (explaining costs and expenses imposed under § 1927 are "limited to those that could be taxed under 28 U.S.C. § 1920" (citations omitted)).

IV

After performing a line-by-line review of Great American's fee petition and considering Berger's objections, the Court reduces Great American's requested fees by $1,185.00 to exclude unnecessary fees related to Great American's Rule 11 sanctions motion. *See supra* subsection III.B.5. Section 1927 allows for a $26,876.50 fee and $372.00 cost sanction against Berger, for a total of $27,248.50.

The Court must "balance the equities between the parties" and consider whether "the interests of justice" merit reducing that amount. *Ford v. Temple Hosp.*, 790 F.2d 342, 347 (3d Cir. 1986). Berger confirms his misconduct and the propriety of the sanctions award in his May 18, 2026 letter to opposing counsel: "[Y]ou have strengthened my resolve—it will be another 15 years from now before this litigation finally ends assuming either of you are still practicing by then." (Great American's May, 28, 2026 Letter to the Court at 3, Dkt. No. 129.) Neither a balance of the equities

nor the interests of justice warrant a reduction. *See Zuk v. Eastern Pa. Psych. Inst.*, 103 F.3d 294, 297 (3d Cir. 1996) ("[T]he principal purpose of imposing sanctions under 28 U.S.C. § 1927 is the deterrence of intentional and unnecessary delay in the proceedings." (citations and internal quotations omitted).)

An appropriate Order follows.

BY THE COURT:

***/s/ Gerald J. Pappert***
Gerald J. Pappert, J.